Carl G. Jordan and Barbara Jordan, his wife v. Commissioner.
Jordan v. Commissioner
Docket No. 60603.
United States Tax Court
T.C. Memo 1958-152; 1958 Tax Ct. Memo LEXIS 76; 17 T.C.M. (CCH) 762; T.C.M. (RIA) 58152; August 12, 1958
*76 Held, airline pilot not entitled to trip expense deduction for meals on turn-around trips from his home in Chicago to eastern cities, when elapsed time of round trip did not involve staying at a hotel in eastern terminals. Held, further, petitioner's evidence failed to sustain his burden of proving that he had unreimbursed expenses for long layover trips. Held, under the evidence, petitioner paid more than one-half of the support for his father and mother and is entitled to the dependency credits for both. Stephen Love, Esq., 134 North La Salle, Chicago, Ill., for the petitioners. Robert E. Johnson, Esq., for the respondent. MULRONEY Memorandum Findings of Fact and Opinion MULRONEY, Judge: The respondent determined deficiencies in the income tax of petitioners for the years 1951, 1952 and 1953 in the amounts of $1,039.74, $1,161.68 and $822.86, respectively. The issues in the case are whether respondent was correct in disallowing certain deductions taken by petitioner, Carl G. Jordan, an airline pilot, as "trip expense" in his income tax returns for the years 1951, 1952 and 1953, and also whether said petitioner was entitled to dependency credits for *77 the support of his father and mother during said years. Findings of Fact Some of the facts were stipulated and are found accordingly. Petitioners Carl G. and Barbara Jordan are husband and wife who reside in Chicago, Illinois. They filed their joint income tax returns for the calendar years 1951, 1952 and 1953 with the then collector and/or district director of internal revenue for the district of Chicago, Illinois. Barbara is a party here merely because joint returns were filed and hereinafter Carl G. Jordan will be referred to as the petitioner. Petitioner was employed as an airline pilot with American Airlines, Inc. during all of the years in question. His home was in Chicago and he flew round trips from Chicago to Washington, D.C., Chicago to New York, and Chicago to Boston. All of these trips involved layovers ranging from 2 to 33 hours in the eastern terminals. The flying time for these round trips would ordinarily range from 7 to 9 hours. In his income tax returns for the years 1951, 1952 and 1953, petitioner claimed $8.50 per day for 177, 145 and 135 days, respectively, as trip expense. The respondent disallowed these deductions. Petitioner failed to substantiate *78 the above expense deductions. In 1951 petitioner's father was 74 years old and his mother was 66 years old. They lived alone in a small cottage in South Bend, Indiana. The father was ill during these years and he died in January 1953. Petitioner was the sole support of his parents with the exception of $96 a month received by his father as a Spanish-American War veteran's pension. Petitioner contributed a minimum of $1,200 a year during the years involved for the support of his parents. Petitioner supplied over one-half of the support of his father and over one-half of the support of his mother during the years involved. Opinion Section 23(a)(1)(A), Internal Revenue Code of 1939, provides, in part, that in computing net income there shall be allowed as a deduction "All the ordinary and necessary expenses paid or incurred during the taxable year in carrying on any trade or business, including * * * traveling expenses (including the entire amount expended for meals and lodging) while away from home in the pursuit of a trade or business." During the years involved petitioner, an airline pilot, flew from Chicago to three eastern cities (Washington, New York and Boston) and return. *79 All of these trips involved a layover of some hours in the eastern terminals but petitioner gave no breakdown of the extent of the layovers except to state"It could be as little as two or three hours; it could be as long as thirty-three hours." He estimated the flying time for these round trips would range from 7 to 9 hours. While the record is vague, it fairly appears that a long layover trip would be one that involved going to a hotel in an eastern terminal and the short layover trips were the usual runs. The long layover trips were caused by weather conditions or what petitioner stated "actual schedule projection." American Airlines furnished food for petitioner on board the plane when flying at meal time and on long layovers the airline either furnished food and lodging and if it did not furnish the food and lodging on such long layovers, the employer would reimburse petitioner for such expenditures. Petitioner stated he rarely ate the meals on the plane, although the food was excellent, because his position as a captain in charge of the plane involved such nervous strain and demanded such concentration on his duties that he could not eat in comfort. He also testified that he *80 did not always take the hotel rooms or meals provided by his employer on the long layovers and on these occasions when he paid for his own hotel room and meals he received no reimbursement. The expense for meals on the short layover trips would not be deductible under section 23(a)(1)(A), I.R.C. of 1939. On these short trips petitioner would not be "away from home" within the meaning of the statute. Fred Marion Osteen, 14 T.C. 1261; Sam J. Herrin, 28 T.C. 1303. In the Osteen case a railway postal clerk made a 6-hour round trip every day from his home in Greenville, South Carolina, to Charlotte, North Carolina. In holding the meal he ate in Charlotte, North Carolina, was not a deductible expense under the statute previously quoted, we held "petitioner was in no essentially different position from the worker who is unable to have one of his meals at home." In Sam J. Herrin, supra, the petitioner was a truck driver who made a round trip each day of 346 miles which took about 14 hours. He ate all three meals during working hours and we held the petitioner was "not 'away from home' within the intendment of section 23(a)(1)(A)." The record shows *81 that on the long layover trips petitioner's expenses for meals and lodging were either furnished or, if not furnished by the employer, petitioner was reimbursed for such meals and lodging expense. There was no testimony by petitioner that the amount of such reimbursement to him was taken into his gross income. There is an item of income reported in each of the years involved called "trip pay" which appears to be $106.30 in 1951, $34.25 in 1952, and $122.35 in 1953. The item is unexplained by the testimony but if these are expense reimbursement items, deductions to the extent of reimbursement should be allowed. The rest of petitioner's trip expense for meals and lodging on the long layover trips is confined by his testimony to those occasions when he did not take the meals and lodging that were furnished. We do not know the number of these occasions. Petitioner merely said that he did "not always" take the furnished food and lodging. Even if we were to assume such refusal to take the offered meals and lodging, coupled with petitioner's personal payment of these items, would give rise to a deduction under the statute, the evidence wholly fails to substantiate any payment by petitioner *82 in any amount for such items. Petitioner's evidence consists of what he calls a fair approximation of his unreimbursed expense. He arrives at his total by an average of $8.50 per day for every day he worked. The evidence is of no value as proof of the deductions taken. Except as previously indicated with respect to reimbursed items, we hold petitioner failed to sustain his burden of proving the respondent erred in disallowing the deduction. The Commissioner concedes in his brief that the petitioner is entitled to a credit for a dependent on account of his mother. He does not claim that the father is disqualified as a dependent because he had gross income of $600 or more, apparently conceding that the father's pension as a Spanish-American War veteran in the total annual amount of $1,152 was not gross income. The Commissioner does not claim that either spouse had any disproportionate expense in any year. Their larger expenses, such as food, utilities and household expenses, were not divisible and must be allocated one-half to each as long as the father lived. The record as a whole leads to the rather clear inference that their total resources were a pool out of which all of the expenses *83 of the two parents were paid. The petitioner supplied more than one-half of that total and thus paid more than one-half of the support of each parent, as has been found as a fact. Decisions will be entered under Rule 50.